UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LARRY PERKINS, )<br>)<br>Movant )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | Civil No. 07-79-B-W<br>Criminal No. 05-24-B-W[1] |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION AND
ORDER ON MOTION FOR BAIL**

Larry Perkins pled guilty in April 2005 to federal drug and firearm offenses and was sentenced to 60 months in prison followed by four months of supervised release. During those proceedings this court denied Perkins's motion to withdraw his guilty plea, a motion that was filed after his sentencing hearing. Perkins pursued an unsuccessful direct appeal and is now back in this court with a 28 U.S.C. § 2255 motion. Perkins moves to vacate the guilty plea, conviction, and sentence on the grounds that he was denied effective assistance of counsel. Perkins has also filed a letter motion for bail (Docket No. 5), arguing that his 28 U.S.C. § 2255 grounds have so much merit that he should be released pending the outcome of his § 2255 proceeding. I deny Perkins's motion for bail and recommend that the Court deny Perkins 28 U.S.C. § 2255 relief.

---

[1] Perkins and the United States cite Criminal Number 03-68-B-W in the header of their pleadings. However, the 2003 case was superseded by the 2005 case and Perkins is in custody for his conviction in the 2005 case.

*Discussion*

Perkins presses two ineffective assistance of counsel grounds related to his decision to plead guilty and his sentence. In <u>United States v. Colon-Torres</u> the First Circuit Court of Appeals explained:

> The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." It is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, <u>United States v. Wade</u>, 388 U.S. 218 (1967), including at sentencing. <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977) (holding that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel").
> The touchstone for any ineffective assistance of counsel claim is the two-part test laid down by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> <u>Id.</u> at 687. In other words, defendant "must show that counsel's performance was so deficient that it prejudiced his defense." <u>United States v. Ademaj</u>, 170 F.3d 58, 64 (1st Cir.1999) (summarizing <u>Strickland</u>). As the <u>Strickland</u> Court explained, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." <u>Strickland</u>, 466 U.S. at 687.
> In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the Supreme Court applied <u>Strickland</u>'s two-part test to ineffective assistance of counsel claims in the guilty plea context. <u>Id.</u> at 58 ("We hold, therefore, that the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the <u>Hill</u> Court explained, "[i]n the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Id.</u> at 58-59. Accordingly, [the § 2255 movant] will have to show on remand "a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial."
Id. at 59.

382 F.3d 76, 85-86 (1st Cir. 2004).

*First Ground*

In his first ground Perkins claims that as a result of his attorney's improper counseling, he decided to plead guilty on counsel's advice that he would not be held responsible for 100 or more marijuana plants[2] and on the understanding that he could receive a probation-only sentence, he likely faced a sentence of three years or less, and that his supervised release term would not exceed three year.  Perkins insists that counsel affirmatively assured him that he would not be held accountable for more than 99 marijuana plants.   He describes counsel advice on this score as "materially flawed" and "proven inaccurate."  (Sec. 2255 Mem. at 5.)

*The Information*

The information charged Perkins with two counts, the controlled substance count at issue here and a firearm count that is not an issue in this 28 U.S.C. §2255 proceeding. Count One charged that Perkins "did knowingly and intentionally possess with intent to manufacture 50 or more marijuana plants, a Schedule I controlled substance, and did aid and abet the commission of that crime[] [i]n violation of Title 21, United States Code, Sections 841(a)(1), and Title 18, Section 2.  It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(C) apply to the conduct described herein."  (Information, Crim. No. 05-24-B-W, Docket No. 1 at 1.)

---

[2]  Perkins describes his charge as having been one of a "C Felony" and his sentence having been imposed for a "B Felony."   He seems to be referring to the subsections of 21 U.S.C.  § 841.

*The Government's Version of the Offense*

As relevant to Count One of the indictment, the Government's Version of the Offense reads:

> Had the case proceeded to trial, the evidence would have included testimony of officers from the Old Town Police Department, United States Drug Enforcement Administration, and the Maine Drug Enforcement Agency. The evidence would show that in early 2003, Detective Michael Holmes of the Old Town Police Department received information from an anonymous source that Larry Perkins was growing marijuana at his camp in Alton. Holmes began an investigation as a result of this information; as part of the case, Holmes obtained some garbage that had been left at defendant's camp on the roadside for pick-up. This garbage included grow materials, a small amount of dried marijuana, and various bills showing defendant was living at this location. Holmes used this information to obtain a state search warrant that was executed on July 11, 2003.
> During the search, agents discovered approximately 99 mature marijuana plants growing along the tree line of the property. A hose ran from the structure to one of the locations.
> Inside the house, the agents discovered evidence of a grow operation including grow lights, starter kits, fertilizer, etc.

(Gov't's Version, Crim. No. 05-24-B-W, Docket No. 3 at 1-2.)

*The Plea Agreement*

The plea agreement was executed on April 8, 2005; Perkins's trial was set to start on April 11, 2005. With respect to Count I, the plea agreement provided:

> Count One of the Information charges the defendant with possession with intent to manufacture 50 or more marijuana plants in violation of Title 21, United States Code, Section 841(a)(1). The parties agree and understand that the maximum statutory penalties that may be imposed upon conviction of **Count One** is imprisonment for not more than 20 years, and a fine not to exceed $1,000,000, and a period of supervised release of at least 3 years up to life to be served upon completion of any term of imprisonment and an additional term of imprisonment of 2 years upon any violation of the term of supervised release.
> ….
> The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statement made by the defendant or

4

> defense counsel or objections to the presentence report or to questions by the court at the time of sentencing.
>
> ….
>
> Validity of Other Agreements; Signature. Defendant understands that there are no further or other promises or agreements, either express or implied, other than those contained in this Agreement and that none will be made except in writing signed by all parties. The signature of the defendant in the space designated signifies his full and voluntary acceptance of this Agreement.

(Plea Agreement, Crim. No. 05-24-B-W, Docket No. 6 at 1-4.) Prefacing Perkins's signature is the declaration: "I have read this Agreement and have carefully reviewed every part of it. I understand it and I have voluntarily agreed to it." (Id. at 4.)

### *The Motion to Withdraw the Guilty Plea*

In addressing Perkins's motion to withdraw his guilty plea, this Court has already examined Perkins's complaints about counsel and the advice to plead guilty, although not through the lens of a 28 U.S.C. § 2255 examination of counsel's performance. And, in upholding this Court when Perkins challenged the denial of the motion to withdraw his plea on direct appeal, the First Circuit expressly noted: "Our ruling does not prejudice defendant's right to raise an ineffective assistance of counsel claim by filing a timely petition for post-conviction relief." See United States v. Perkins, No. 06-1668 (1st Cir. Feb. 9, 2007).

In his February 24, 2006, motion to withdraw his guilty plea, Perkins claimed that miscommunications between counsel and Perkins about the potential length of his prison term lead to Perkins's misunderstanding of the nature and consequence of his guilty plea.

At the March 1, 2006, hearing on that motion Perkins testified that on the day he entered his guilty plea he understood that he would more than likely be out that day awaiting sentencing and probably would have no jail time left, at the very most he

5

thought he faced an additional 34 days.  (Mar. 1, 2006, Tr. at 7.)   Perkins claimed that he understood that the prosecutor "had come to he senses" and that he was going to be "charged with" 50 to 99 plants.  (Id. at 6-7.) ³  Perkins acknowledged that at the time of his plea the presiding judge questioned him for 40 or 45 minutes and that he understood the judge's questions. (Id.) Nevertheless, Perkins insisted that Attorney Williams – an attorney who represented Perkins during the plea but not with respect to the motion to withdraw --  told him "that the only way to go through the proceedings" was to answer this Court's questions in the affirmative and that they had to get through the Rule 11 before he could challenge the drug quantities. (Id. at 7-8, 19 -27, 46.)   He singled out the $25,000 forfeiture figure (id. at 23-24, 27), the rights he was giving up by pleading to the felony offense (id. at 25), the sufficiency of time to discuss the charges with his lawyer (id. at 27), and the truth of the content of the information (id. at 28) as the issues he fudged at the hearing.   By the end of the plea proceedings, Perkins testified, "I knew that I was being lied to by – by both the prosecution and my own attorney, and I didn't get a chance to speak up at that point in time" because no one gave him the opportunity and he did not speak up because he did not know what to say. (Id. at  7-9.)⁴  He explained that he believed that the U.S. Attorney knew that Attorney Williams was "very incompetent" and was trying to capitalize on this incompetency to "pull a fast one."  (Id. at 29.)  Perkins reported that his lawyer told him "there would be no chance for any minimum mandatory" sentence because of the "safety valve" provision of the federal sentencing guidelines.  (Id. at 11-12, 44.)  According to Perkins, Attorney Williams "was all hyped

---

³ Perkins indicated that it was "the sheriff lady"/ a federal marshal that gave him these assurances. (Mar. 1, 2006, Tr. at 8.)

⁴ Again, Perkins faults the United States Marshal, indicating that he told her at the end of the hearing that he wanted to say something and she responded "too bad."  (Id. at 8-9.)

6

up about trial" and assured him that she "wasn't afraid of these people in Bangor." (Id. at 13.) Asked if he instructed his attorney to withdraw his plea, Perkins testified: "I told her immediately to withdraw the plea."(Id. at 14.) He recalled conveying the instruction within a week after the plea was entered. (Id.)[5] According to Perkins he never saw a motion to withdraw; rather, Attorney Williams told him that she had filed a motion for a new bail hearing. (Id.)

With respect to the plea agreement, Perkins maintained that Attorney Williams advised him to sign the plea agreement. (Id. at 40.) He described how he went to sign this agreement on April 8 and was told by the U.S. Attorney present that Attorney Williams could not make it but that she was "happy" with the agreement and expected that Perkins would "be happy in signing it." (Id. at 42.) He allowed that his attorney had previously read to him the contents of the agreement over the phone and had discussed the contents with Perkins. (Id. at 43, 52, 58.) Perkins stated that Attorney Williams had told him that the U.S. Attorney had "come around." (Id. at 44.) She told Perkins:

> So you are going to be charged with the 50-plus marijuana plants you had. They are not gonna ask that you be incarcerated whatsoever. They are not going to voluntarily suggest that you be out on bail, but there is no chance of any minimum mandatory. Everything is all straightened out. We won't have to go to trial on the 11th, but you need to go down and sign this today.

(Id. at 44, 54.) Attorney Williams told him that he should be bailed after the change of plea because the U.S. Attorney was not going to object to bail; Williams indicated, "that the prosecution would say absolutely nothing and leave it up to the defense and the judge on bail. (Id. at 54.) Perkins maintained that he had repeatedly told Attorney Williams

---

[5] Perkins also testified that he told the attorney who represented him after Attorney Williams – the same attorney representing him at sentencing and at the hearing on his motion to withdraw – that he wanted to withdraw his plea and that these requests occurred prior to sentencing. (Id. at 16-17.)

that he did not want to plead guilty to anything over 34 days in jail.  (Id.)  At the time he signed the plea agreement he understood that the government's position was that most additional time would be 34 days.  (Id. at 55.)  Although he never trusted the prosecuting U.S. Attorney, Perkins testified that Attorney Williams "swore up-and-down" on his "new credibility."  (Id. at 56-57.)  Perkins stated that he asked his attorney why this part of the agreement was not in writing and Attorney Williams told him that this was how the court system worked and that they needed to get through the Rule 11 to get sentencing "to bring all of these other things about."  (Id. at 59.)

With respect to his offense conduct, Perkins testified that he had 79 to 85 marijuana plants on his land when the property was searched (Id. at 32- 33.) He opined: "I was growing marijuana on my land. There is no doubt about that. I was doing it. I was doing it voluntarily. I had less than a hundred plants.  I was growing it to keep my son off the street from buying Oxycontin. . . Bottom line, I am guilty of growing 79 to 85 marijuana plants." (Id. at  36.)  He conceded that he had more plants that he had destroyed because they were male plants.  (Id. at 37.) He insisted that he "never has over a hundred plants on the land" because he had been "warned of certain things."  (Id. at 37-38.)  Although he had stated to law enforcement authorities that at "one time or another, there was probably more than a hundred plants on that land," the number was never a hundred at the same time. (Id. at 38- 39.)   He believed that the U.S. Attorney and Attorney Williams "concocted" a story that Perkins told law enforcement that earlier in the year he had had more than 100 plants in order to entice Perkins to plead guilty.  (Id. at 38.)

8

When asked whether he thought the Court was lying to him when it advised him that it might be required to sentence him to the mandatory minimum if it found that he possessed at least 100 plants and that he would then be subjected to a five year sentence and four years of supervised release, Perkins responded that the "scuttlebutt on the street" is that "the court system is based on lies." (Id. at 46.) He reiterated that he was following counsel's advice when he answered that he understood this exposure and that he had been told that "over a hundred plants were not going to be considered." (Id. at 47.) The same reason was offered when Perkins was asked if there were any promises made and assured the court that there were not. (Id. at 47-49.) Perkins claimed that other promises were made to him that were not in writing and not included in the plea agreement. (Id. at 50.) Perkins maintained: "I was coerced into this. I was lied to about this." (Id. at 51.) He insisted he was promised that he would be sentenced based upon fewer than 100 marijuana plants, that the statutory minimum mandatory sentence would not apply, and that at the most he was looking at is another 34 days in jail. (Id. at 51-53).

For her part, Attorney Williams testified that in advance of the Rule 11 plea proceedings – "[a]fter a long discussion about the meaning of what the various questions would be in the process" -- she advised Perkins to answer the Court's questions honestly and denied having had any discussion with Perkins about answering the Court's questions affirmatively simply to get through the change of plea process. (Id. at 61.) Attorney Williams also denied the existence of any agreement that prevented the Government from arguing at sentencing that more than 99 plants were involved in Perkins's offense. (Id. at 62-63.) Moreover, she communicated no such agreement to Perkins. (Id. at 63.) She explained that they were on the eve of trial and that the main concern was the number of

9

plants that Perkins might be held accountable for. (Id. at 62.) She told the Court that the government had offered the opportunity to plead guilty to an information charging 50 or more plants, leaving the dispute about the number of plants to be resolved at sentencing. (Id.) Asked whether there was any agreement by the prosecutor that the Government would not seek the mandatory minimum of five years if the proof at sentencing was that there were a hundred or more plants, she responded: "I explained time and again that the major concern with the case, if it went to trial, was that if, in fact, Mr. Perkins was convicted of more than a hundred plants, the mandatory minimum meant mandatory, not discretionary." (Id. at 63). Williams acknowledged that she talked with Perkins about the "safety valve" and her plan of preparing a sentencing memorandum to convince the Court to apply the safety valve reduction and sentence Perkins below the statutory mandatory minimum. (Id. at 64.)[6] Williams testified that she had numerous conversations with Perkins following his April 11, 2005, guilty plea, and that Perkins mentioned that maybe he should withdraw his plea but they had no substantive discussions either about how to do that or whether or not Williams should pursue such a motion. (Id. at 65). Williams testified that Perkins never instructed her to prepare a motion to withdraw his plea. (Id. at 65-66).

Perkins also insisted that he told the attorney that replaced Williams (and who represented Perkins during the motion to withdraw) that he instructed him to file a motion to withdraw around Thanksgiving and about a half a dozen times before his sentencing. (Id. at 15-16, 21.) Counsel told him it would probably be too late. (Id. at 17, 58.) Even though he asserted that his current attorney also refused to file a motion to withdraw

---

[6] Attorney Williams related that she had tried to withdraw from the case in March 2005 because her relationship with Perkins was one of distrust, boarding on adversarial. (Id. at 65.)

10

despite being asked to do so, Perkins indicated that he was "very comfortable" with the representation he was receiving from his current counsel.  (Id. at 21.)

During the argument portion of the proceeding, counsel representing Perkins at the change of plea made it clear that Perkins was not claiming that there was any infirmity with the Court's Rule 11 inquiry.  (Id. at 68.)  The heart of Perkins's claim was that he was being told how to answer certain questions.  (Id. at 69-68.)   Counsel said that Perkins's only "plausible reason" for withdrawing his guilty plea was that Attorney Williams made misrepresentations when she instructed him to answer the Court's questions affirmatively during the Rule 11 plea colloquy "even though the answer should have been no."  (Id. at 69-71.)[7] Counsel conceded that Perkins did not contest his actual innocence, and under questioning by the Court, Perkins himself acknowledged that he "did knowingly and intentionally possess with intent to manufacture 50 or more marijuana plants." (Id. at  75-76, 79.)  Finally, counsel agreed there was no claim that the Government had breached the terms of the plea agreement. (Id. at 80.)[8]

Perkins also had the opportunity to directly address the court.  He insisted that he never pled guilty to an offense that carried a minimum mandatory sentence of five years; he would have gone to trial if he thought he faced that exposure.  (Id. at 77-78.)  Asked by the court whether or not he knowingly and intentionally possessed with the intent to manufacture 50 or more marijuana plants as charged in Count One of the indictment, Perkins told the court that this was true.  (Id. at  78-79.)

---

[7] Counsel informed the Court that Perkins admitted his possession of the firearm and did not seek to withdraw the guilty plea to that charge. (Id. at 71.)

[8] Counsel also conceded that the "relevant time gap" was the ten months between Perkins's April 11, 2005, plea and his February 24, 2006, motion to withdraw the plea. (Id. at 74.) This was because, in the Court's words, Perkins "knew at the time that he entered his plea the basis –- the factual basis for his current motion" to withdraw the plea. (Id.)

When the U.S. Attorney delivered his argument, the Court explained that it was troubled because the Government's information asserted a violation of 21 U.S.C.§ 841(b)(1)(C) with its twenty-year statutory maximum whereas the indictment alleged a § 841(b)(1)(B) violation which carried the five year mandatory statutory minimum. (Id. at 81-84.) The U.S. Attorney argued that the Apprendi v. New Jersey, 530 U.S. 466 (2000) line of cases dictated that the defendant must be apprised of the statutory maximum not the full range of penalties. (Id. at 84.) The Court observed that Rule 11 requires that the defendant be apprised not only of the statutory maximum but also of any mandatory minimum (id.), and the U.S. Attorney asserted that the fact that the Court clearly advised Perkins that he faced the possibility of being sentenced to a statutory mandatory minimum of five years was sufficient (id. at 85-86).

This Court announced its decision from the bench. The Court observed that a defendant may withdraw a guilty plea if he can show "a fair and just reason for requesting the withdrawal." (Id. at 87). However, the Court stressed that there is no absolute right to withdraw a plea, and the burden of persuasion is upon the defendant concerning five factors justifying withdrawal. (Id.)

First, the Court determined that the plea was voluntary and complied with Federal Rule of Criminal Procedure 11. (Id.) Accordingly, the Court found that Perkins's guilty plea was "voluntary, intelligent, and knowing." (Id.) The Court then assessed the force of the reasons for withdrawing the plea. (Id. at 88.) It observed that Perkins had "repeatedly informed the Court that he was guilty of possessing somewhere in the range of between … 79 and 85 marijuana plants" (id.), observing that Perkins's assertion that he did not possess 100 or more plants was a sentencing issue and was "not directed toward the

question of whether he was guilty" (id.). Thus, the Court declared "it is abundantly clear that the motion [to withdraw] has to, for that reason alone, be denied." (Id.)

Crucial to this 28 U.S.C. § 2255 motion, the Court proceeded to analyze Perkins's alternate reasons for seeking to withdraw his plea, the claim that because of his attorney's advice, he did not realize he could be subject to a statutory mandatory minimum sentence of five years, and the subsidiary claim that he had a "side agreement" with the Government that his attorney advised him not to share with the Court. (Id. at 88-89.) The Court observed that during the Rule 11 proceedings it told Perkins it wanted truthful answers and that the Court had a right to rely on the answers Perkins gave during that proceeding. (Id. at 89.) It explained:

> When the court asks a defendant, during the course of the Rule 11, a question, particularly when that question is prefaced by notice to the defendant that the court is seeking a truthful answer, the court simply has to accept the answer as being true.
> The court advised Mr. Perkins as follows: I'm going to ask you a very important question, Mr. Perkins, and I want a truthful answer. Is there any respect with which you disagree with what is set forth in the April 8, 2005 government's version of the offense? And the defendant responded, I believe it's all true, Your Honor, and reiterated it.
> The court has a right and an obligation, I believe, to rely on statements made by the defendant during the course of the Rule 11. That is the purpose of the Rule 11.
> Further, there was some question at that time, because it was in the interregnum between Blakely[9] and Booker[10], as to how the court would make a determination -- or how the determination was to be made as to whether the mandatory minimum applied.
> The court specifically asked -- advised Mr. Perkins as follows: What I want you to understand, though, is that -- without prejudging which way this is going to happen, is the following, Mr. Perkins. It may or may not be true, depending on the number of marijuana plants involved, that there are mandatory minimums that could be applicable to your case in terms of sentencing. Do you understand that? The defendant said, I am more under the impression that I would be in a category 7. The court

---

[9] Blakely v. Washington, 542 U.S. 296 (2004)
[10] Booker v. United States, 543 U.S. 220 (2005)

13

>responded, well, that's a different issue. That's your sentencing guideline. And you consulted with Ms. Williams at that point.
>
>And then I said to Mr. Perkins the following: What I am about to tell you is based on the following. That Congress has set certain mandatory floors for sentencing, and if you fit within those mandatory floors, then I will have no choice, because Congress has taken my discretion as a sentencing judge out of my hands, but to impose that mandatory, at least the mandatory minimum that Congress has told me to impose. For your purposes, in the event a quantity of at least a hundred plants is established -- and that may be established by the court if the government is correct, or it may be -- have to be established by a jury if you are correct -- but in the event it is determined that at least a hundred plants are involved, Congress will require me to impose a sentence of at least five years, and your supervised release, which we talked about earlier, will be at least four years. Do you understand that? And the defendant answered, yes.
>
>When the defendant responded, yes, the court has a right to rely on that response, and it does today rely on that response, that at the time he entered into his guilty plea and entered his Rule 11, that he had been advised by the court of the potential of a mandatory minimum and that he knew that the potential of a mandatory minimum existed, however that mandatory minimum was to be established under the law at that time.

(Id. at 89-91.)

Next, the Court addressed the timing of the motion. It had taken Perkins ten months from the entry and acceptance of his plea to seek to withdraw it and, the Court observed, that the lapsing of that amount of time was a sufficient reason for denying the motion. (Id. at 91.) Turning to the question of Perkins's innocence, the Court again observed that Perkins did not claim he was actually innocent of the offense to which he pled guilty. (Id. at 91-92.) To the contrary, he had "repeatedly" acknowledged his guilt and challenged only the number of plants triggering the statutory mandatory minimum. (Id. at 88, 91-92.) Finally, there was no claim that the Government had breached the plea agreement. (Id. at 92.) Still, the Court observed that although the information did not mention the statutory provision concerning the mandatory minimum sentence, "Mr. Perkins understood that he might be subject to a five-year mandatory minimum

14

depending on the number of plants that were established at the time of sentencing." (Id. at 92-93.) For all of these reasons, the Court denied Perkins's motion to withdraw his guilty plea. (Id. at 93.)

In his reply to the United States' response to this § 2255 motion, Perkins argues that the Court may have informed him of his "potential" exposure to a mandatory minimum but Rule 11 requires that the defendant be apprised on his or her "actual" exposure to a mandatory minimum. (Reply Mem. at 2.) He argues that "the Court's advice compounded counsel's erroneous and ineffective assistance." (Id.) "Indeed," Perkins asserts, had he "been advised that his guilty plea would certainly – and not potentially – result in at least a five year term of imprisonment, he would never have entered a plea of guilty, since to do so would be senseless since he would expect the same after trial." (Id. at 4.) "Simply put," Perkins maintains, "the record is devoid of proof that petitioner understood that he would be exposed to a minimum of five years of imprisonment." (Id.)

It is simply not true that the record is devoid of proof that Perkins understood that he faced the potential of a mandatory minimum sentence of five years; this Court expressly joined the issue with Perkins at the change of plea hearing.[11]

As this Court is well aware, the issue of Perkins's exposure to the mandatory minimum sentence was thoroughly contested and addressed after the change of plea hearing. On March 22, 2006, the Court issued a sixteen-page sentencing order.

---

[11] Perkins relies on United States v. Castro-Gomez, 233 F.3d 684 (1st Cir 2000), a case reversing the denial of a motion to withdraw a plea. The First Circuit concluded that the District Court should have informed the defendant that the information filed by the Government, taking into account his prior criminal history, mandated a life sentence. Id. at 687. In that case, the Government in the Information stated "that based on appellant's prior criminal history, it would seek life imprisonment." Id. at 686. "No mention of the government's Information was made at appellant's change of plea hearing." Id.

(Sentencing Order, Crim. No. 05-24-B-W, Docket No. 52.) That order addressed Perkins's eligibility for a safety valve reduction under U.S.S.G. § 5C1.2(a)(1) in light of his prior sentence for violating a protective order, observing the magnitude of the issue in view of the potential for the 60-month mandatory minimum under 21 U.S.C. §841(b)(1)(B). (Id. at 2-3 & n. 6.) The Court decided the question against Perkins. (Id. at 8 &n.13.) The Court also concluded that Perkins possessed a firearm in connection with the offense making him ineligible for the safety valve reduction under U.S.S.G. § 5C1.2(a)(2). (Id. at 8-10.)[12]

The Court then addressed the question of what the standard of proof should be vis-à-vis the drug quantity determination, an issue key to the question of whether or not Perkins would be subject to the 60-month mandatory minimum. (Id. at 12-16.) Describing the concern as "more complicated than it appears at first blush" given the complexion of Perkins's case (id. at 12 n.14), the Court followed United States v. Harris, 536 U.S. 545 (2002), and settled on a preponderance of the evidence standard (id. at 13, 15-16). The Court acknowledged that United State v. Malouf, 377 F. Supp. 2d 315 (D. Mass. 2005) held that Harris was no longer good law in light of Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 542 U.S. 296 (2005) but declined to follow the Malouf District Court decision until directed otherwise by the Supreme Court or the First Circuit. (Id. at 13-16.) Notably, the First Circuit has since reversed the Malouf District Court, following Harris and United States v. Goodine, 326 F.3d 26 (1st Cir. 2003), holding that the preponderance of the evidence standard still applied vis-à-vis

---

[12] The Court deferred until sentencing the question of whether or not Perkins sufficiently disclosed information to the Government. (Id. at 10- 12.)

16

drug quantity determinations triggering a mandatory minimum sentence. United States v. Malouf, 466 F.3d 21, 22-27 (1st Cir. 2006).

At the April 12, 2006, sentencing the Court carefully weighed the drug quantity issue. (Apr. 12, 2006, Sentencing Tr. at 106-112, 114-15, 122.) Again, Perkins directly insisted that he only had 79 to 85 plants because he "had an idea of what the law was." (Id. at 114.) The Court was well aware of how close the call was. (Id. at 114-15.) It reiterated its determination that the violation of a protective order represented a criminal history point that blocked the safety valve reduction. (Id. at 115.) And of relevance to the validity of counsel's advice to plead guilty, the United States made it clear that if the statutory minimum was not applicable it would have argued against acceptance of responsibility and for obstruction of justice. (Id. at 130.)

This history demonstrates that the drug quantity determination and the question of Perkins's eligibility for the safety valve reduction were close and difficult calls. Perkins makes it clear that he is challenging only the performance of Attorney Williams with respect to her advice to plead guilty. Attorney Williams withdrew on November 11, 2005. Her anticipated safety valve challenge was ably carried on by new counsel and the depth of attention that the court paid to Perkins's eligibility to the reduction is demonstrative of the fact that Attorney William's intended strategy had some merit. Furthermore, the question of drug quantity and Perkins's responsibility for 100 or more plants remained a going concern after his plea, right through to sentencing. It is evident that the Court made a very close call when it concluded that he was responsible for 99 plants found outside and one plant found inside the garage. The Court made this finding despite Perkins's adamant argument that he was only responsible for 79-85 plants.

17

The Court has already conducted an evidentiary hearing that included testimony from Attorney Williams on what she told Perkins and what her defense strategy was and the court weighed against this Perkins's version of what his interaction with Attorney Williams consisted of.  The Court has already had an opportunity to weigh the witnesses' credibility on the concerns raised by this § 2255 motion.  See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."); see also, e.g., Sanford v. United States, 495 F. Supp. 2d 151, 155 (D. Me. 2007).   Given this record  -- the hearing on the motion to withdraw the plea and the Court's considered conclusions pertaining to sentencing  -- I would be hard pressed to recommend that this Court would find Strickland infirmity with regards to Attorney Williams's representation of Perkins with respect to the Perkins's first ground. See, e.g., Roberson v. United States, 901 F.2d 1475, 1477 -79 (8th Cir. 1990).

*Second Ground*

In his second ground Perkins asserts that counsel failed to object to or appeal the imposition of a four-year period of supervised release without Perkins having been put on notice that he was subject to a term of more than three years.   Perkins describes the Court's decision on this score as an upward departure.[13]  As the United States points out, this Court's finding that Perkins possessed 100 or more marijuana plants brought his offense within the ambit of 21 U.S.C. § 841(b)(1)(B) which provides for the a term of

---

[13] In responding to Perkins's memorandum, the United States breaks Perkins's second ground into two.  I have treated it as one.

supervised release of at least four years.  This statutory requirement trumps any sentencing 'departure' argument.   Thus, once the Court arrived at its conclusion that Perkins possessed at least 100 plants, neither sentencing nor appellate counsel had a basis to challenge the imposition of the four-year term of supervised release.  Furthermore, the record is clear that the court advised Perkins that he could be subject to a mandatory minimum of five years incarceration if the Court concluded he possessed at least 100 marijuana plants and that in that case his term of supervised release would be at least four year.  (Apr. 11, 2005, Tr. at 19.)[14]

## *Conclusion*

For the reasons set forth above, I recommend that the Court deny Perkins 28 U.S.C. § 2255 relief.  I deny Perkins's motion for bail (Docket No. 5).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 16, 2007.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

---

[14]  Perkins does not address the United States' argument on the supervised release ground in his reply memorandum beyond stating that it merits no reply.  (Reply Mem at 4.)